# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| WEST EDNA ASSOCIATES, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:19-cv-00607-GMN-BNW |
| vs. | ) | |
| | ) | **ORDER** |
| TWIN CITY FIRE INSURANCE | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 8), filed by Defendant Twin City Fire Insurance Company ("Twin City"). Plaintiff West Edna Associates, Ltd., doing business as Mojave Electric ("Plaintiff") filed a Response, (ECF No. 12), and Twin City filed a Reply, (ECF No. 14).

Also pending before the Court is the Motion to Remand, (ECF No. 9), filed by Plaintiff. Twin City filed a Response, (ECF No. 10), and Plaintiff filed a Reply, (ECF No. 13).

Also pending before the Court is Twin City's Motion for Leave to Supplement its Response to the Motion to Remand, (ECF Nos. 18, 21). Plaintiff filed a Response, (ECF No. 23), and Twin City did not file a reply.

Also pending before the Court is the Motion to Dismiss, (ECF No. 22), filed by Defendant Harris Insurance Services, Inc. ("Harris"). Plaintiff filed a Response, (ECF No. 24), and Harris did not file a reply.[1]

Also pending before the Court is Harris's Motion to Strike, (ECF No. 25). Plaintiff filed a Response, (ECF No. 26), and Harris did not file a reply.

---

[1] Twin City moves for leave to supplement its Response to Plaintiff's Motion to Remand "in order to advise the Court that [Plaintiff] has served Twin City through the Nevada Commissioner of Insurance[.]" (Mot. Leave Suppl. Resp. at 1, ECF No. 21). Good cause appearing, Twin City's Motion for Leave to Supplement its Response to the Motion to Remand, (ECF Nos. 18, 21), is granted.

# I.    <u>BACKGROUND</u>

This matter arises from an insurance dispute involving a commercial insurance liability policy. (*See* Compl. ¶¶ 5–8, Ex. to 2d Am. Pet. Removal, ECF No. 20-1).  Plaintiff alleges its insurance provider, Twin City, wrongfully denied insurance coverage for a lawsuit filed against it in the Eighth Judicial District Court ("state court"). (*See id.* ¶¶ 19, 47).  Plaintiff also sues its insurance broker, Harris, for allegedly breaching its duty to timely report a claim to Twin City, on Plaintiff's behalf. (*Id.* ¶ 64–68).  The facts are as follows: [2]

## A.    Policies Issued by Twin City to Plaintiff

Through Harris, Plaintiff purchased insurance policy number 00 KB 0229077-11 (the "2011 Policy") from Twin City. (Compl. ¶ 7).  The "Policy Period" of the 2011 Policy was from March 1, 2011 to March 1, 2012. (2011 Policy at 3, Ex. 1 to Twin City MTD, ECF No. 8-1) (providing March 1, 2011 as the "Inception Date" and March 1, 2012 as the "Expiration Date"); (*Id.* at 10) (defining "Policy Period" as the period from the Inception Date to the Expiration Date).  The 2011 Policy included four "Coverage Parts" including a "Directors, Officers and Entity Liability Coverage Part" ("D&O Liability Part"). (*Id.* at 45).  Relevant here, the D&O Liability Part provided that Twin City "shall pay Loss on behalf of an Insured Entity resulting from an Entity Claim first made against such Insured Entity during the Policy Period or Extended Reporting Period, if applicable, for a Wrongful Act by an Insured Entity." (*Id.* at 19); (Compl. ¶ 8).

---

[2] While several of Plaintiff's allegations rely on policies issued by Twin City in 2011 and 2012, the policies are not included with Plaintiff's Complaint.  Twin City, however, includes the policies as exhibits to its instant Motion to Dismiss. (*See* Exs. 1, 2 to Twin City MTD, ECF Nos. 8-1, 8-2).  Additionally, Plaintiff provides the policies as exhibits to its Response. (*See* Exs. 2, 3 to Pl.'s Resp., ECF Nos. 12-2, 12-3).  Accordingly, the Court will consider the policies in determining Twin City's Motion to Dismiss. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (holding that on a motion to dismiss, a court may consider documents outside the complaint when the contents of the document are alleged in the complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance).

The "Insured Entity" was defined as Plaintiff. (*Id.* at 3). The term "Entity Claim" was defined as any:

> (1) written demand for monetary damages or other civil relief commenced by the receipt of such demand;
>
> (2) civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or
>
> (3) criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;
>
> against an Insured Entity.

(*Id.* at 20). In addition, the term "Wrongful Act" was defined, in relevant part, as "any actual or alleged . . . error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed by . . . an Insured Entity." (*Id.* at 40).

The Common Terms and Conditions contained a section entitled Notice of Claim that was applicable to "all Liability Coverage Parts," including the D&O Liability Part. (*Id.* at 9). The Notice of Claim section stated, in relevant part:

> As a condition precedent to coverage under this Policy, the Insureds shall give the Insurer written notice of any Claim as soon as practicable after a Notice Manager becomes aware of such Claim, but in no event later than sixty (60) calendar days after the termination of the Policy Period, or any Extended Reporting Period as described in Section IX.

(*Id.* at 13). The term Claim as used in the Notice of Claim section included any Entity Claim. (*Id.* at 8, 19).

Effective March 1, 2012, Twin City issued policy number 00 KB 0229077-12 to Plaintiff (the "2012 Policy"). (2012 Policy at 3, Ex. 2 to Twin City MTD, ECF No. 8-2). The Policy Period of the 2012 Policy was March 1, 2012 to March 1, 2013. (*Id.*). Twin City

submits, and Plaintiff does not dispute, that "[o]ther than the Policy Period, the terms and conditions of the 2012 Policy were the same in all relevant respects to the 2011 Policy." (Twin City MTD at 4).

## B. The Underlying Action

In early 2010, Plaintiff was selected as the electrical subcontractor for the new Las Vegas City Hall construction project ("Project"). (Compl. ¶ 11).  Plaintiff's work included installing the building's emergency standby power system. (*Id.* ¶ 12).  The materials for the emergency standby power system were provided by non-party Cashman Equipment Company ("Cashman"). (*Id.* ¶ 13).  On September 30, 2011, Cashman filed a complaint in state court against Plaintiff and several other defendants, including CAM Consulting Co. (the "Underlying Action"). (*Id.* ¶ 19).  Cashman alleged that it entered into an agreement with CAM Consulting Co. ("CAM") whereby Cashman agreed to sell equipment to CAM for the total price of $755,893.89, to be incorporated into the Project. (Cashman Compl. ¶ 13, Ex. 5 to Twin City MTD, ECF No. 8-5).[3]  Further, Plaintiff contracted with CAM to purchase the electrical equipment that CAM had agreed to buy from Cashman. (*Id.* ¶ 88).  Additionally, Cashman alleged that despite being aware that CAM was purchasing the equipment from Cashman, Plaintiff "refused to issue a joint check payable to both CAM and [Cashman] to pay for the equipment [Cashman] supplied to the Project." (*Id.* ¶¶ 8990).  Instead, Plaintiff issued payment for the equipment directly to CAM. (*Id.* ¶ 91).  Moreover, after receiving the funds to pay

---

[3] Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  A court may "take judicial notice of matters of public record outside the pleadings and consider them for purposes of [a] motion to dismiss." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (internal quotation and citation omitted).  Moreover, courts "may take judicial notice of undisputed matters of public record . . . including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).  There is no suggestion that the state court documents provided by Twin City as exhibits to its Motion to Dismiss are incorrect.  The Court therefore takes judicial notice of Cashman's complaint, (ECF No. 8-5), filed in state court.

Cashman from Plaintiff, CAM failed to pay for the equipment. (*Id.* ¶¶ 20, 31). While failing to pay Cashman, CAM allegedly wrote two checks to Plaintiff for the total amount of $275,636.70. (*Id.* ¶ 92).

Cashman brought four causes of action against Plaintiff: (1) foreclosure of surety interest; (2) enforcement of mechanic's lien release bond; (3) unjust enrichment; and (4) contractor's license bond claim. (Compl. ¶ 20). Following a bench trial, an appeal, and a reversal by the Nevada Supreme Court, the Underlying Action was settled. (*Id.* ¶ 25). In defending and settling the Underlying Action, Plaintiff alleges it incurred $1,739,565.54 in fees and expenses. (*Id.* ¶ 26).

### C.      Plaintiff's Notice of Claim to Twin City and the Instant Action

Plaintiff alleges that once it "learned the facts and allegations justifying coverage," Plaintiff, "through [Harris], submitted a timely claim to Twin City." (*Id.* ¶ 29). "Twin City received notice of [Plaintiff's] claim on February 25, 2013." (*Id.* ¶ 31). On December 12, 2013, Twin City denied Plaintiff's claim. (*Id.* ¶ 33). According to Twin City, the claim was untimely and "the Policy's contractual liability exclusion precluded coverage." (*Id.* ¶¶ 34, 36). On April 17, 2018, following the settlement of the Underlying Action, Plaintiff "renewed its claim with Twin City." (*Id.* ¶ 38). However, Twin City denied Plaintiff's claim reasserting the reasons given in 2013. (*Id.* ¶ 39). Over the course of the following months, Plaintiff provided Twin City with additional documentation supporting its position that it was entitled to coverage. (*Id.* ¶ 40). "[O]n December 7, 2018, Twin City again denied [Plaintiff's] claim for the same two reasons." (*Id.* ¶ 41). On January 10, 2019, Plaintiff sent Twin City a letter asserting that, under the facts and Nevada law, Plaintiff was entitled to coverage. (*Id.* ¶ 42). On March 1, 2019, Twin City sent Plaintiff a letter denying coverage "for the same two reasons." (*Id.* ¶ 43).

Plaintiff filed the instant action in state court on March 7, 2019, and Twin City subsequently removed to this Court on the basis of diversity jurisdiction. (*See* Pet. Removal,

ECF No. 1).  Plaintiff's Complaint states the following causes of action: (1) breach of contract against Twin City; (2) breach of the implied covenant of good faith and fair dealing against Twin City; (3) insurance bad faith against Twin City; and (4) negligence against Harris.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party

questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## B. Motion to Remand

District courts have subject matter jurisdiction over: (1) civil actions arising under federal law, and (2) civil actions where no plaintiff is a citizen of the same state as a defendant and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a). A defendant may remove an action to federal court only if the district court has subject matter jurisdiction over the matter. 28 U.S.C. § 1441(a). "Removal statutes are to be 'strictly construed' against removal jurisdiction." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012) (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)). The party asserting federal jurisdiction bears the burden of overcoming the presumption against federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### III. DISCUSSION

In order to ensure the Court has subject matter jurisdiction over this matter, the Court will first address Plaintiff's Motion to Remand, (ECF No. 9), followed by Twin City and Harris's (collectively, "Defendants") motions to dismiss and other related motions.

#### A. Motion to Remand

Plaintiff, a citizen of Nevada, moves for remand arguing that Harris is also a Nevada citizen and destroys diversity.[4] (Mot. Remand at 7, ECF No. 9). Twin City does not dispute that Harris is a Nevada citizen but argues that Harris was fraudulently joined in this action and its citizenship should be ignored for purposes of subject matter jurisdiction. (Resp. Mot Remand at 2, ECF No. 10).

From the face of the Complaint, it is clear that the Court is without subject matter jurisdiction. Federal question jurisdiction is not at issue as all claims arise under state law. (*See* Compl. ¶¶ 45–71, Ex. to 2d Am. Pet. Removal, ECF No. 20-1). Diversity jurisdiction is not satisfied because Plaintiff and Harris are Nevada citizens. (*Id.* ¶¶ 1, 3). Notwithstanding the Court's lack of subject matter jurisdiction, Twin City raises the doctrine of fraudulent joinder to support this Court's retention of the case. (Twin City Resp. at 2).

"Fraudulent joinder is a term of art." *McCabe v. Gen. Foods. Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Joinder is fraudulent, for the purposes of determining subject matter jurisdiction, if "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.* (citing Moore's Federal

---

[4] Plaintiff also argues that Twin City lacked standing to remove this case to federal court because at the time of removal, April 9, 2019, Twin City had not yet been properly served under NRS 680A.250(3). (Mot. Remand at 9); NRS 680A.250(3) (providing that "[s]ervice of such process against a foreign or alien insurer must be made only by service thereof upon the Commissioner."). In its Amended Response, Twin City explains that it was served through the Nevada Insurance Commissioner on June 28, 2019, pursuant to NRS 680.260(2). (Mot. Leave Suppl. Resp. at 2, ECF No. 21); NRS 680.260(2) ("Service of process against an insurer for whom the Commissioner is attorney must be made by delivering to and leaving with the Commissioner . . . two copies of the process, together with the fee therefor as specified in NRS 680B.010, taxable as costs in the action . . . ."). Accordingly, this argument is moot and the Court will not consider it.

Practice (1986) ¶ O.161[2]).  When making this determination, the court may "pierc[e] the pleadings and consider[ ] summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)).  Where joinder of a non-diverse defendant is deemed fraudulent, "the defendant's presence in the lawsuit is ignored for purposes of determining diversity." *Id.* at 1067.

Here, Plaintiff's Complaint sets forth one claim of negligence against Harris.  "[T]o prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009).  In Nevada, the statute of limitations for a negligence claim is two years. NRS 11.190(4)(e).  Further, a negligence cause of action accrues "when the wrong occurs and a party sustains injuries for which relief could be sought," and "the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990).

Plaintiff's Complaint alleges that on December 12, 2013, Twin City denied coverage for the Underlying Action for two reasons, the first reason being that notice of the claim was untimely. (Compl. ¶¶ 33, 34).  Plaintiff further alleges that "[d]espite being aware of the [Underlying Action] from the beginning, Harris Insurance did not submit a claim to Twin City on [Plaintiff's] behalf until February 25, 2013." (*Id.* ¶ 67).  Thus, Harris "breached its duty of care to [Plaintiff] by failing to ensure that a timely claim was submitted to Twin City." (*Id.* ¶ 68).

Twin City maintains that "the allegations of the Complaint make clear that the negligence cause of action against Harris accrued no later than December 12, 2013, more than five years before [Plaintiff] brought its claim against Harris." (Resp. Mot. Remand at 8).  Indeed, a negligence cause of action accrues when "the wrong occurs," "a party sustains

injuries for which relief could be sought," and "the injured party discovers or reasonably should have discovered facts supporting" the negligence claim. *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990).

Plaintiff cites *Walker v. Am. Bankers Ins. Grp.*, 836 P.2d 59 (Nev. 1992), for the proposition that "when an insurer initially denies coverage under a policy, the limitations period for filing a lawsuit is tolled while the parties continue negotiating whether the coverage exists." (Mot. Remand at 9). Plaintiff alleges that "[o]n April 17, 2018, after the [Underlying Action] settled, [Plaintiff] renewed its claim with Twin City." (Compl. ¶ 38). Plaintiff asserts that the parties continued negotiating until March 1, 2019, when Twin City "finally and officially" denied Plaintiff's claim as untimely. (*Id.* ¶ 43); (Mot. Remand at 11). Thus, Plaintiff maintains that March 1, 2019, is the date on which its negligence claim against Harris accrued. As discussed below, Plaintiff's reliance on *Walker* is misplaced. (*Id.* at 10).

In *Walker*, after the insurer issued a formal denial of liability, the insurer's adjuster advised the insured, "[a]s soon as I hear word from [the insurer] in regards to the *reconsideration of this matter*, I will advise you accordingly." *Walker*, 836 P.2d at 63 (emphasis added). Later, in correspondence to the insured's attorney, the insurer's adjustor stated: "My principal, [insurer] has instructed us to *reopen our file* and handle this matter on their behalf with your offices, specifically in regards to the personal property claim." *Id.* (emphasis added). "Similar correspondence and negotiations between the parties continued until [the insurer] filed its complaint for declaratory relief." *Id.* The Nevada Supreme Court concluded that the parties continued to negotiate the insured's claim until the date on which the insurer filed its complaint for declaratory relief. *Id.* The court held that the "period of limitation was tolled until [the date of the complaint], and, consequently, does not bar [the insured] from suing to recover for his personal property losses." *Id.*

In the present case, Plaintiff does not allege that its insurer, Twin City, made statements similar to those in *Walker* regarding the reconsideration or reopening of its claim file. Instead, Plaintiff asserts the December 12, 2013 denial letter invited Plaintiff to engage in further negotiations about whether coverage existed because the letter stated: "If you believe our analysis is incorrect, please let us know." (Mot. Remand at 1011). The Court does not agree. As Twin City argues, a request that an insured advise if it disagrees with the insurer's position does not change a denial of coverage into an open-ended discussion. (Resp. Mot. Remand at 10). Additionally, even if the denial letter had invited Plaintiff to engage in further negotiations, Plaintiff's allegations indicate that it did not respond to this invitation until April 2018—more than four years after the 2013 denial letter. (Compl. ¶ 38). Thus, no negotiations took place during that period of time. By April 2018, the statute of limitations had long run and there was nothing to toll. As such, *Walker* does not apply.

In short, Plaintiff's claim accrued on December 12, 2013, and under settled Nevada law, the negligence claim brought against Harris on March 7, 2019, is time-barred. Accordingly, the doctrine of fraudulent joinder applies, and the Court will ignore Harris's citizenship for the purposes of diversity jurisdiction. Plaintiff's Motion to Remand is denied.

### B. Twin City's Motion to Dismiss

Twin City moves to dismiss arguing that Plaintiff has failed to state a claim upon which relief can be granted. (*See* Twin City Mot. Dismiss ("MTD") 7:10–22, ECF No. 8). More specifically, Twin City argues that Plaintiff's breach of contract claim cannot prevail because Plaintiff failed to provide notice of the Underlying Action within the requisite reporting period set forth by the Policy. (*Id.* at 7). Further, "[b]ecause Twin City's denial of coverage was correct, the claims for breach of the duty of good faith and fair dealing and for bad faith must also be dismissed." (*Id.*). The Court will address each of these claims in turn.

///

### 1.  **_Breach of Contract_**

To state a breach of contract claim, a plaintiff must allege: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages resulting from defendant's breach. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006); *see Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987).

Under Nevada law, insurance policies are contracts, which must be enforced according to their terms. *Continental Cas. Co. v. Summerfield*, 482 P.2d 308, 310 (Nev. 1971).  The starting point for the interpretation of any contract is the plain language of the contract. *McDaniel v. Sierra Health and Life Ins. Co., Inc.*, 53 P.3d 904 (Nev. 2002).  When a contract contains clear and unequivocal provisions, those provisions shall be construed to their usual and ordinary meaning. *Dickenson v. Nevada*, 877 P.2d 1059, 1061 (Nev. 1994).  Then, using the plain language of the contract, the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances. *See NGA # 2 Ltd. Liab. Co. v. Rains*, 946 P.2d 163 (Nev. 1997); *see also Burrows v. Progressive Casualty Ins.*, 820 P.2d 748, 749 (Nev. 1991).  "In the absence of ambiguity, contract interpretation is an issue of law for the court, and may be decided on a motion to dismiss." *Keife v. Metro. Life Ins. Co.*, 797 F. Supp. 2d 1072, 1075 (D. Nev. 2011) (citing *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed. Cir. 1984)).

Here, the parties do not dispute the existence of a valid contract.  Rather, in its Motion to Dismiss, Twin City argues that the 2011 Policy does not afford coverage for the Underlying Action because Plaintiff failed to provide notice of the Underlying Action to Twin City within sixty days of the expiration of the Policy Period. (Twin City MTD at 8).  Further, Twin City asserts the Underlying Action is an "Entity Claim" first made during the 2011 Policy's Policy Period, and therefore the 2011 Policy is the only policy that can apply. (*Id.*).  As such, Plaintiff is not entitled to coverage under the 2012 Policy. (*Id.*).  Additionally, Twin City contends that

the "notice-prejudice" rule does not apply to policies like the ones at issue here—that is, "claims-made-and-reported" policies. (*Id.*).

In response, Plaintiff asserts that its notice of the Underlying Action was timely because it was reported as soon as practicable and within the Policy Period. (Pl.'s Resp. Twin City MTD 7:19–22, ECF No. 12). Further, Plaintiff maintains that, contrary to Twin City's assertions, the "notice-prejudice" rule applies. (*Id.*). Therefore, because Twin City was not prejudiced by the timing of the claim's submission, Twin City cannot deny coverage on the basis of untimeliness. (*Id.* 1113).

### *(a)    "as soon as practicable"*

The 2011 Policy provided, in relevant part:

> As a condition precedent to coverage under this Policy, the Insureds shall give the Insurer written notice of any Claim as soon as practicable after a Notice Manager becomes aware of such Claim, but in no event later than sixty (60) calendar days after the termination of the Policy Period, or any Extended Reporting Period as described in Section IX.

(2011 Policy at 13, Ex. 1 to Twin City MTD, ECF No. 8-1). The language "as soon as practicable" does not mean immediate; instead, it "call[s] for notice within a reasonable length of time under all facts and circumstances of each particular case." *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 256 P.3d 958, 962 n.4 (Nev. 2011) (quoting *American Fidelity Fire Ins. v. Adams*, 625 P.2d 88, 89 (Nev. 1981)).

Plaintiff alleges that its claim was reported as soon as practicable under the circumstances because at the time the Underlying Action began, Plaintiff was under the reasonable belief that "it was a simple payment dispute between Cashman and CAM that would not justify coverage under the Policy." (Pl.'s Resp. Twin City MTD at 8); (Compl. ¶ 27). Further, once Plaintiff "learned of the facts and allegations justifying coverage under the Policy," Harris submitted the claim to Twin City on Plaintiff's behalf. (Pl.'s Resp. Twin City

MTD at 8). Plaintiff asserts that its allegations must be accepted as true and that determining whether notice of a claim was reported "as soon as practicable is a fact-intensive inquiry that should be left to the jury." (*Id.*) (citing *Food Mkt. Merch., Inc. v. Scottsdale Indem. Co.*, 857 F.3d 783, 786 (8th Cir. 2017)).

However, even accepting Plaintiff's position that it submitted its claim as soon as practicable, what the 2011 Policy required was written notice of any claim "as soon as practicable, *but in no event later than sixty (60) calendar days after the termination of the Policy Period. . . .*" (2011 Policy at 13) (emphasis added). Notably, the Policy Period for the 2011 Policy was March 1, 2011 through March 1, 2012. Part III.B.1(b), *infra*. Thus, accounting for the sixty-day grace period, notice of the Underlying Action should have been provided to Twin City in written form by April 30, 2012, at the latest. Plaintiff did not file its claim until February 25, 2013. As such, Plaintiff's first argument is unavailing.

### *(b)    the Policy Period and renewal of the 2011 Policy*

Twin City maintains that neither the 2011 Policy nor the 2012 Policy affords coverage for the Underlying Action. Each of the policies is a "claims-made-and-reported" policy. [5] As such, two requirements must be met before coverage can exist. First, the "Entity Claim"—defined as a "civil proceeding . . . commenced by the filing of a complaint"—must be "first

---

[5] As the Nevada Supreme Court explained in *Physicians Ins. Co. of Wisconsin v. Williams*, 279 P.3d 174, 176 (Nev. 2012), for coverage under a claims-made-and-reported policy, a claim must be made and reported within the policy period. In addition, the court explained the distinction between "occurrence" polices and claims-made-and-reported policies as follows:

> An occurrence-based policy provides broader coverage but at greater cost to the insured than a claims-made policy. Under an occurrence policy, 'it is irrelevant whether the resulting claim is brought against the insured during or after the policy period, as long as the injury-causing event happens during the policy period.' 'By contrast, the event that invokes coverage under a "claims made" policy is transmittal of notice of the claim [during the policy period] to the insurance carrier.'

*Id.* (citations omitted).

made" within the Policy Period. Second, proper written notice must be provided within sixty days after the termination of the Policy Period.

Regarding the first requirement, Cashman filed its complaint against Plaintiff on September 30, 2011, and Plaintiff was served on October 6, 2011. (Acceptance of Service, Ex. 6 to Twin City MTD, ECF No. 8-6). The Underlying Action is therefore an Entity Claim "first made" no later than October 6, 2011—that is, during the Policy Period of the 2011 Policy (*i.e.*, March 1, 2011 to March 1, 2012). Twin City thus concludes that the only policy that can apply to the Underlying Action is the 2011 Policy.

In response, Plaintiff argues that the applicable Policy Period was not March 1, 2011 to March 1, 2012, but rather March 1, 2011 to March 1, 2013. According to Plaintiff, the 2012 Policy constituted a "renewal" of the 2011 Policy. Plaintiff cites a number of cases including *Cast Steel Prod., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298, 1303 (11th Cir. 2003), for the proposition that if a claims-made-and-reported policy is renewed, then the policy period for reporting the claim continues for the duration of the renewal. If true, it would mean that Plaintiff's February 23, 2013 notice of the Underlying Action was not untimely. Nevertheless, for the reasons discussed below, the Court rejects Plaintiff's argument.

In *Cast Steel*, the insured brough an action for declaration that either (or both) of its claims-made-and-reported policies covered a defective product claim that accrued at the conclusion of the initial policy period but was not reported until the start of the subsequent policy period. *Cast Steel*, 348 F.3d at 1299–1300. The insured argued that because the initial policy automatically extended the claims reporting period upon cancellation or non-renewal of the policy, but was silent as to whether renewal of the policy would provide the same reporting extension, an unresolved ambiguity existed. *Id.* at 1299. In finding for the insured, the Eleventh Circuit noted that the two policies at issue required reporting prior to the expiration of the policy, and thus "did not provide the insured with a grace-period after expiration of the

policy to report claims." *Id.* at 1303. The court also pointed out that the insured had asked its broker to submit notice of the claim to the insurer three months before the initial policy expired, but the broker failed to do so until just hours after the initial policy had expired." *Id.* at 1303.

The court recognized that *Pantropic Power Prod., Inc. v. Fireman's Fund Ins. Co.*, 141 F. Supp. 2d 1366, 1368 (S.D. Fla. 2001), a prior decision affirmed by the Eleventh Circuit, had rejected the argument advanced by the insured in *Cast Steel*, but explained that the policy at issue there had "a 60-day grace period." *Id.* at 1302. The *Cast Steel* court found that it would be "illogical and inequitable" to deny coverage, "*particularly in the scenario we are faced with here.*" *Id.* at 130304 (emphasis added).

Unlike the policies in *Cast Steel*, here the 2011 Policy included a sixty-day period allowing Plaintiff to report claims "first made" during the Policy Period. Moreover, the present case does not present a scenario like that in *Cast Steel* because in that case, the insured's claim was reported just hours after the initial policy expired. In contrast, Plaintiff reported its claim to Twin City several months after termination of the Policy Period.

Additionally, Plaintiff's argument is contrary to the language of the 2011 Policy which specifically defines the Policy Period as a period that ends on its Expiration Date—March 1, 2012. Under Nevada law, insurance policies are contracts, which must be enforced according to their terms. *Continental Cas. Co. v. Summerfield*, 482 P.2d 308, 310 (Nev.1971). Moreover, courts "will not rewrite contract provisions that are otherwise unambiguous. In addition, [courts] will not increase an obligation to the insured where such was intentionally and unambiguously limited by the parties. *Farmers Ins. Grp. v. Stonik By & Through Stonik*, 867 P.2d 389, 391 (Nev. 1994) (citing *Senteney v. Fire Ins. Exchange*, 707 P.2d 1149 (Nev. 1985)). By extending the 2011 Policy Period as Plaintiff suggests, the Court would be improperly altering the terms of the policy. *Canfora v. Coast Hotels & Casinos, Inc.*, 121 P.3d 599, 603

(Nev. 2005) ("The court has no authority to alter the terms of an unambiguous contract."). As such, this argument fails.

Next, Plaintiff asserts that "the Policy's language also supports the conclusion that a claim incurred during the initial policy period can be reported during the renewed policy period." (Pl.'s Resp. 10). Plaintiff points to Section IX of the 2011 Policy, titled "Extended Reporting Period," which states in relevant part: "If any Liability Coverage Part is cancelled or non-renewed for any reason other than non-payment of premium, the Insureds shall have the right to elect an extension of time to report claims under such liability Coverage Part (the "Extended Reporting Period")." (2011 Policy at 13). Plaintiff argues this provision allows the insured to pay an additional premium to extend to reporting period if the policy is either cancelled or non-renewed. (Pl.'s Resp. 10). On this basis, Plaintiff concludes that because "the extension is not necessary if the policy remains in force, including renewals," this implies that renewals extend the Policy Period. (*Id.*). However, this argument is not persuasive. Indeed, this very proposition was addressed and rejected in *Checkrite Ltd., Inc. v. Illinois Nat. Ins. Co.*, 95 F. Supp. 2d 180 (S.D.N.Y. 2000). There, the court emphasized that the Extended Reporting Period provision "does not support a reading into the contract of an 'inherent' extended reporting period in event of renewal." *Id.* at 193. Rather, the provision "sets out specific circumstances and terms for when an insured may obtain additional reporting time, *i.e.*, where there is nonrenewal or cancellation, and only in exchange for additional premium dollars." *Id.* Additionally, the court explained the rationale for providing this option only in the case of cancellation or nonrenewal:

> An insured who cancels or does not renew faces a risk of coverage gaps that can result from switching to an occurrence policy or to another claims-made policy. A gap can occur where an insured switches to an occurrence policy because there will be no coverage for claims based on acts that happened during the claims-made policy but before the occurrence policy. A gap can occur where the insured switches to another claims-made policy because the subsequent carrier might impose a retroactive date that limits coverage for prior acts. An extended

reporting period option gives the insured the ability to protect itself in these situations. Where the insured simply renews its policy, however, it does not face the same problems of coverage gap.

*Id.* (citing *Ehrgood v. Coregis Insurance Co.*, 59 F. Supp. 2d 438, 446 (M.D. Pa. 1998)).

Here, it is not disputed that the 2011 Policy was not cancelled or non-renewed, and therefore no Extended Reporting Period was ever issued. Moreover, Plaintiff faced no risk of a coverage gap and therefore, there was no need for an Extended Reporting Period. As such, Plaintiff's argument is without support.

Lastly, Plaintiff indicates that the 2011 Policy and the 2012 Policy "carried the same policy number and contained the exacts same coverage provisions." (Pl.'s Resp. at 11). Therefore, Plaintiff submits that the Policies created apparently seamless coverage over two periods and the Policy Period for reporting Plaintiff's claim did not end until March 1, 2013. The Court disagrees. Rather, "courts have held that renewal of policies does not create a single policy period, even if all the policies have the same policy number." *Clarendon Nat'l Ins. Co. v. Foley & Bezek, LLP*, 2001 WL 1223486, at *3 (C.D. Cal. July 26, 2001) (citations omitted). In sum, because Plaintiff's renewal of the 2011 Policy did not extend the Policy Period to March 1, 2013, Plaintiff's February 2013 notice was untimely. Accordingly, Plaintiff has not shown that Twin City's denial of coverage for the Underlying Action constitutes a breach of contract.

### (c)      the notice-prejudice rule

In *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, the Nevada Supreme Court announced that

> [i]n accordance with the majority of jurisdictions and with the express language of [Nevada Administrative Code] 686A.660(4), we adopt a notice-prejudice rule: in order for an insurer to deny coverage of a claim based on the insured party's late notice of that claim, the insurer must show (1) that the notice was late and (2) that it has been prejudiced by the late notice.

*Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 256 P.3d 958, 963, 965 (Nev. 2011).  While Nevada has adopted this rule with respect to "occurrence" policies, *id.*, the Nevada Supreme Court has not reached the question of whether the notice-prejudice rule extends to claims-made-and-reported policies. *See Williams*, 279 P.3d at 178 n.4.  Nevertheless, several courts, including the Ninth Circuit, have held that the notice-prejudice rule does not apply to claims-made-and-reported policies because, in that context, "notice is the event that actually triggers coverage." *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 956–57 (9th Cir. 2002); *Trek Bicycle Corp. v. Mitsui Sumitomo Ins. Co., Ltd.*, No. 5:05-cv-44, 2006 WL 1642298, at *3 (W.D. Ky. Jun. 7, 2006) (declining to extend Kentucky's notice-prejudice rule to claims-made-and-reported policies); *PIMG, Inc. v. Carolina Cas. Ins. Co.*, No. 09-cv-2022-BEN-CAB, 2010 WL 11594809, at *3 (S.D. Cal. Mar. 5, 2010) ("Courts have consistently held, however, that the Notice-Prejudice Rule does not apply to 'claims made and reported policies.'").

Here, Plaintiff does not contend that the notice-prejudice rule applies to claims-made-and-reported policies when a claim is reported *outside* the policy period.  However, Plaintiff maintains that the notice-prejudice rule applies to claims-made-and-reported policies when a claim is reported *within* the policy period.  On this basis, Plaintiff argues that because the Policy Period for the 2011 Policy was March 1, 2011, to March 1, 2013, and Plaintiff's claim was reported on February 25, 2013, then its claim was reported *within* the Policy Period and the notice-prejudice rule applies.  Plaintiff thus concludes Twin City must demonstrate prejudice before it can deny coverage.

Because Plaintiff's argument is based on the assumption that Plaintiff's claim was reported within the Policy Period, the Court need not address it.  As indicated in Part III.B.1(b) *supra*, the Policy Period for the 2011 Policy was from March 1, 2011, to March 1, 2012.  Plaintiff's policy renewal and the issuance of the 2012 Policy did not extend the Policy Period

until March 1, 2013. As such, Plaintiff's claim was not reported within the Policy Period and this argument fails.

In sum, while Plaintiff's Complaint alleges that "Twin City breached the Policy by wrongfully denying [Plaintiff's] claim," (Compl. ¶ 47), the Court is not "required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the Court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). The terms and conditions contained in the 2011 Policy contradict Plaintiff's contention that it timely provided notice of the Underlying Action. Thus, Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, Twin City's Motion to Dismiss is granted with respect to Plaintiff's breach of contract claim.

### 2. <u>Bad Faith and Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Twin City argues that "[b]ecause there is no coverage for the Underlying Action under the Policies, then Plaintiff's claims for bad faith and breach of the implied covenant of good faith and fair dealing should also be dismissed." (Twin City MTD at 17). The Court addresses each claim *seriatim*.

#### (a) breach of the implied covenant of good faith and fair dealing

In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989). This implied covenant requires that parties "act in a manner that is faithful to the purpose of the contract and the justified expectations of the other party." *Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract . . . damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis*

*Prods.*, 808 P.2d 919, 923 (Nev. 1991). A breach of the duty of good faith and fair dealing can occur "[w]here the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract." *Id.* at 922–23.

Here, Plaintiff's Complaint alleges "Twin City breached its duty [of good faith and fair dealing] through the conduct described in the preceding paragraphs which was unfaithful to the purpose of the contract." (Compl. ¶ 53). Plaintiff further alleges that "[a]s a direct result of Twin City's actions, [Plaintiff's] justified expectations have been denied, and [Plaintiff] has been damaged in excess of $10,000." (*Id.* ¶ 54). Other than conclusory assertions, the Complaint fails to allege facts showing that Twin City's decision to deny coverage went against the intention and spirit of the contract and that Plaintiff's expectations were justified. The Complaint fails to state a cause of action for breach of the covenant of good faith and fair dealing. Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### (b)    *bad faith*

To assert a claim for bad faith, a plaintiff must show: (1) an insurer's denial of (or refusal to pay) an insured's claim; (2) without any reasonable basis; and (3) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for its claim denial. *Sgrillo v. Geico Cas. Co.*, 323 F. Supp. 3d 1167, 1170 (D. Nev. 2018). Bad faith is "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Am. Excess Ins. Co. v. MGM*, 729 P.2d 1352, 1354–55 (Nev. 1986). An insurer is not liable for bad faith so long as it had a reasonable basis to deny coverage. *Pioneer Chlor Alkali Co., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F. Supp. 1237, 1242 (D. Nev. 1994).

As discussed in Part III.B.1 *supra*, Twin City did not wrongfully deny coverage for the Underlying Action. Rather, Plaintiff failed to timely report the Underlying Action to Twin

City, thus barring coverage.  Under these circumstances, Plaintiff has not provided sufficient factual matter showing that Twin City's denial of coverage was without reasonable basis. Accordingly, Plaintiff's cause of action for bad faith fails to state a claim upon which relief can be granted.  This claim is dismissed.

### C.    Harris's Motion to Dismiss

Harris moves for dismissal of Plaintiff's negligence claim, arguing that the applicable two-year statute of limitations has expired and therefore Plaintiff's claim is time-barred.[6] (Harris MTD at 7, ECF No. 22).  According to Harris, the stature of limitations on Plaintiff's claim began to run once Twin City denied Plaintiff's claim for coverage and "expressly cited to untimeliness as the reason for that denial." (*Id.*).  Harris points to allegations in the Complaint which provide that Twin City denied coverage on December 12, 2013, and that "Twin City asserted that [Plaintiff's] claim was untimely." (*Id.* at 8) (citing Compl. ¶¶ 33, 34).  As such, Plaintiff "had actual notice of Harris's alleged negligence in filing an untimely claim as early as December 12, 2013," yet failed to bring the present cause of action until March 2019—more than five years later. (*Id.*).  For the reasons explained in Part III.A *supra*, the Court agrees. Plaintiff's negligence cause of action against Harris is time-barred and must be dismissed as a matter of law.  Accordingly, Harris's Motion to Dismiss is granted.

///

///

---

[6] Alternatively, Harris argues that "[b]ecause [Plaintiff] will not suffer any damages unless or until this Court makes a determination that the claim was submitted untimely, [Plaintiff's] singular claim against Harris for professional negligence is premature as a matter of law." (Harris MTD at 5).  In Part III.B.1 *supra*, the Court determined Plaintiff's notice of the Underlying Action was not timely provided to Twin City, thus Plaintiff's claim is not premature.  Moreover, in asserting that Plaintiff's negligence claim is premature, Harris relies on cases addressing legal malpractice claims. (*Id.* at 5, 6) (citing *Semenza v. Nevada Medical Liability Ins. Co.*, 765 P.2d 184 (Nev. 1988); *Jewett v. Patt*, 591 P.2d 1151 (Nev. 1979)).  Harris does not provide analysis showing that legal malpractice case law applies to the instant case.  Nor does Plaintiff's Complaint assert a claim for professional negligence.  As such, the Court will not address this argument. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013) (courts only address arguments that are meaningfully developed).

### D. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

The Court finds that Plaintiff may be able to plead additional facts to support Plaintiff's first, second, and third causes of action against Twin City. Further, the Court finds that Plaintiff may be able to plead additional facts to support Plaintiff's fourth cause of action against Harris. Accordingly, because the Court finds that Plaintiff may be able to plead additional facts to support these causes of action, the Court will grant Plaintiff leave to file an amended complaint.

Plaintiff shall file its amended complaint within twenty-one (21) days of the date of this Order if it can allege sufficient facts that plausibly establish Plaintiff's first, second, and third causes of action against Twin City; and Plaintiff's fourth cause of action against Harris. Failure to file an amended complaint by this date shall result in the Court dismissing these claims with prejudice.

### E. Harris's Motion to Strike

Harris moves to strike documents attached to Plaintiff's Response to Harris's Motion to Dismiss. (Mot. Strike 4:235:7, ECF No. 25). Harris also moves to strike certain "allegations that were not present in [Plaintiff's] Complaint." (*Id.* 2:17).

On its own initiative or upon motion, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

Civ. P. 12(f).  Rule 7(a) lists the six types of "pleadings" that may be filed in federal court: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; and (6) an answer to a third-party complaint. Fed. R. Civ. P. 7(a).  A seventh pleading—a reply to an answer—may be filed, but only if the court orders one. *Id.*  "Rule 7(a) exhaustively enumerates the different 'pleadings' available under the civil rules[.]" *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 112 (2d Cir. 2012).

Here, Harris argues that "[b]ecause [Plaintiff] is prohibited from including extraneous documents or allegations in response to a Motion to Dismiss, yet did so without invoking any of the acceptable or recognized exceptions, all such extraneous references and documents should be stricken[.]" (Mot. Strike 5:9–13).  However, Plaintiff's Response and its exhibits are not pleadings, and therefore, cannot be stricken under Rule 7(a).  Accordingly, Harris's Motion to Strike is denied.

## IV.  <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 9), is **DENIED**.

**IT IS FURTHER ORDERED** that Twin City's Motion to Dismiss, (ECF No. 8), is **GRANTED**.

**IT IS FURTHER ORDERED** that Twin City's Motion for Leave to Supplement its Response to the Motion to Remand, (ECF Nos. 18, 21), is **GRANTED**.

**IT IS FURTHER ORDERED** that Harris's Motion to Dismiss, (ECF No. 22), is **GRANTED**.

///

///

1       **IT IS FURTHER ORDERED** that Harris's Motion to Strike, (ECF No. 25), is

2  **DENIED**.

3       **IT IS FURTHER ORDERED** that Plaintiff is **GRANTED** leave to amend consistent

4  with the foregoing.  Plaintiff shall have twenty-one (21) days from the date of this Order to file

5  an amended complaint.  Failure to file an amended complaint by this date shall result in the

6  Court dismissing Plaintiff's claims with prejudice.

7       **DATED** this ___18___ day of March, 2020.

_____

Gloria M. Navarro, District Judge
United States District Court